*J. J. Feeley,* (*R. Clapp* with him,) for the plaintiff.

---

GEORGE McGUINNESS *vs.* DANIEL F. LEHAN & another.

Bristol.     October 23, 1906. — November 27, 1906.

Present: KNOWLTON, C. J., MORTON, HAMMOND, BRALEY, & RUGG, JJ.

*Negligence,* Employer's liability.

In an action by a boy eighteen years of age employed in a laundry against his employer, for personal injuries from being hit by a piece of the rim of the revolving basket of an extractor which broke ·immediately after the plaintiff had started the machine, it appeared that the plaintiff had been working on the machine for nineteen days when the accident occurred, that he started the machine in the way in which he had been instructed to start it, and followed his instructions in other matters except possibly in the matter of packing the basket. The evidence of the plaintiff tended to show that the basket was packed properly while that of the defendant tended to show that it was overloaded and that this was the cause of the accident. *Held,* that the question whether the plaintiff was in the exercise of due care in packing the basket as he did and in failing to discover a defect in the machine, if it existed, was for the jury.

In an action by a boy eighteen years of age employed in a laundry against his employer, for personal injuries from being hit by a piece of the rim of the revolving basket of an extractor which broke immediately after the plaintiff had started the machine, it appeared that the extractor had an outer shell of cast iron, within which and of the same shape, with a space of three and a quarter inches between, was the revolving basket into which clothes were put to be dried, that it was expected that when the power was applied and the basket began to revolve it would vibrate more or less but that after a few revolutions it would cease to vibrate and revolve steadily, and that it was not expected or intended that the basket would "bang" against the shell. There was evidence tending to show that the basket had "banged" against the shell before the accident causing the rim to strike the shell and break, that this "banging" was due to the machine being out of order, and that the defendant knew of it or might by the exercise of reasonable care have known of it, that after the accident the basket was lying against the shell and that this ought not to have happened if the machine had been in order, also that the machine had been

repaired before the accident and that in making the repairs one of the discs, which formed a part of the conical bearing for the vertical shaft on which the basket rested, had been left out. *Held,* that there was evidence for the jury of negligence on the part of the defendant.

TORT for injuries received while in the employ of the defendants. Writ dated October 20, 1903.

At the trial in the Superior Court before *Crosby,* J. the following facts appeared :

The plaintiff, then about eighteen years old, was employed in a hotel kept by the defendants. He originally was employed by the defendants as house man, doing chores about the hotel, and had worked in that capacity for either two or three months, until June 1, 1903, when he was put at work in the laundry connected with the hotel and operated by the defendants. He continued working in the laundry until the time of the accident on June 19, 1903, when he was working on what is known as an extractor * or washing machine, and had just started it when the rim around the top of the basket broke and one of the pieces that flew off struck him.

This extractor consists of two principal parts, a shell to catch the water which flies from the material which is being dried, and a basket to contain the material. The shell is stationary. It resembles a kettle set on two legs, with no top or bottom. It is twenty-seven inches in diameter at the middle, the largest part, the sides curving, so that the diameters of the openings at the top and bottom are less than at the middle. One of the legs of the kettle is hollow, thus forming a pipe to carry off the water. As the water flies from the basket it collects on the sides of the shell and flows away through the hollow leg. The shell is made of cast iron.

Within the shell is the basket, of practically the same shape as the shell, but twenty inches in diameter in the largest part so that its outside wall is everywhere about three and one quarter inches distant from the inside wall of the shell. Around the circumference of the opening of the basket is a metallic band composed of copper and other materials which projects about one

* The machine appears to have been similar to the one partially described in *Merrimac Chemical Co.* v. *American Tool & Machine Co.* 192 Mass. 206.

half of an inch above the top of the basket, making a rim for it. It was this band which flew in pieces, injuring the plaintiff. The basket is perforated up to a point about two inches below the rim. On the outside of the basket there are three hoops or bands like the hoops of a barrel. The basket rests on a vertical shaft about one and one sixteenth inches in diameter and the shaft rests in a socket in the foundation of the machine. The socket is about six inches long and consists of two parts, an outer chamber and an inner chamber or bushing. Between the outer chamber and the bushing are rubber washers. The shaft sets in the bushing in such a way as to make it a good running fit. In the bottom of the bushing is a disc or washer, the top side of which is hardened and made conical. The bottom of the shaft is hardened and rests upon the cone of this washer. Upon the shaft is a pulley which takes power by a belt from the fast pulley on the driving shaft and thus causes the shaft to turn and with it the basket, which is fastened to its top, the only support of the shaft being the hardened conical bearing and the walls of the bushing.

When the power is applied, the theoretical speed of the shaft and the basket is thirteen hundred and forty revolutions a minute. This, however, is reduced by the slip of the belt to twelve hundred and fifty revolutions a minute. The material to be dried having been put in the basket, the rapid revolutions of the basket and its contents cause the water to fly through the perforations in the basket, thus extracting the water from the material.

The plaintiff testified that it was a part of his duty to work on the extractor; that just before the accident he had put clothes in the extractor and started it by means of the lever used to shift the belt from the loose to the tight pulley; that about a minute after that he was hit; that he heard no noise before he was hit; that he had received instructions just how to wash the clothes from one McGuire, who told him to put the clothes into the washer, turn on the power and start the machine; that he showed him how to start it and turn it off; that nothing was said to him about the operating of the machine other than that; that no one told him to be careful of any part of the machine; and that he never had seen an extractor before.

On cross-examination he testified that he had been working on that machine nineteen days, and had used it about nine times a day; that the last time he had used the machine previous to his injury was the day before at about half past three; and that he then noticed nothing unusual about it.

The evidence in regard to the cause of the accident is described in the opinion.

The defendants asked the judge to rule that there was no evidence of the defendants' negligence, that there was no evidence of the plaintiff's due care, and that the plaintiff could not recover. The judge ruled that there was not sufficient evidence of the defendants' negligence, and ordered a verdict for the defendants. The plaintiff alleged exceptions.

*J. W. Cummings,* (*C. R. Cummings & R. P. Coughlin* with him,) for the plaintiff.

*R. P. Borden,* for the defendants.

MORTON, J. This is an action of tort to recover for personal injuries sustained by the plaintiff while at work upon a washing machine in the laundry connected with a hotel kept by the defendants. At the close of the evidence the judge ruled that there was no sufficient evidence of the defendants' negligence and ordered a verdict for the defendants. The case is here on exceptions by the plaintiff to this ruling and direction. The questions presented are the usual ones of the plaintiff's due care and the defendants' negligence.

The accident was caused by the breaking of the rim on a part of the machine called the basket. The plaintiff, who was about eighteen years old and had been working on the machine nineteen days when the accident occurred, testified that he started the machine by means of the lever used to shift the belt from the loose pulley to the tight pulley and about a minute after was hit by a piece of the rim which broke. He also testified that he had been instructed by one McGuire, who worked on the machine before he did, how to start and stop the machine and how to wash the clothes. There was nothing to show that these instructions were not sufficient or that they were not followed by the plaintiff except possibly in the matter of packing or loading the basket. As to that, testimony introduced by the plaintiff tended to show that it was properly packed or loaded, and testi-

mony introduced by the defendants tended to show that it was overloaded and that the accident was caused thereby. Clearly the question was one for the jury as was also the question whether the plaintiff was or was not negligent in failing to discover the defect, if there was one, in the rim of the machine. We are of opinion that there was evidence for the jury on the question of the plaintiff's due care.

As to the defendants' negligence, there was, we think, evidence from which the jury could have found that the accident was caused by the machine's being out of order and that the defendants knew or in the exercise of due care should have known that it was out of order. The machine consisted of an outer shell within which was a basket into which the clothes that were being washed were put. The basket was fixed to a vertical shaft which was set in a bushing on a conical bearing and so adjusted that when power was applied the basket with its load would after a few revolutions and vibrations find its centre of gravity like a spinning top. There was testimony tending to show that, though it was expected that when the machine was started the basket would vibrate more or less, it was not expected or intended that it would " bang," as the witness described it, against the shell. There was also testimony tending to show that the basket had " banged " against the shell before the accident, which, as the jury could have found, caused the rim to strike the shell and break. And the jury could also have found that this " banging " was due to the machine's being out of order and that the defendants knew of it or in the exercise of reasonable care should have known of it. One witness testified that after the accident the basket was lying against the shell which another witness testified ought not to have happened if the machine had been in order. Another witness testified that the machine had been repaired before the accident, and that one of the discs which formed a part of the conical bearing for the shaft had been left out. It was for the jury to say what effect, if any, this had on the running of the machine. The defendant Lehan testified that the basket had " banged " against the shell before the accident, and that the rim had struck the shell, showing that he knew of the " banging," and it was for the jury to give such weight as they deemed proper to his explanations, and to de-

cide whether the " banging " was or was not due to the machine's being out of order.

We are of opinion that there was evidence for the jury on the question of the defendants' negligence.

*Exceptions sustained.*